**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NYNA COLLINS and TERESA BEAVERS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CARNIVAL CORPORATION,

Defendant.

_______________________________________ /

**Case No. __________________**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Nyna Collins and Teresa Beavers, individually and on behalf of all others similarly situated, bring this Class Action Complaint and allege the following against defendant Carnival Corporation ("Carnival" or "Defendant"), based upon personal knowledge with respect to Plaintiffs and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action against Carnival for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII").

2. Carnival failed to comply with industry standards to protect information systems that contain PII. Plaintiffs seek, among other things, orders requiring Carnival to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3. Carnival is a cruise line operator that owns more than 90 vessels, and owns multiple private islands and beach ports.

4. On April 18, 2026, the ShinyHunters ransomware group claimed to have accessed over 8.7 million Carnival records containing personally identifiable information and internal corporate data. Carnival confirmed it had detected suspicious activity, but has not disclosed meaningful details.

5. Carnival knowingly obtained sensitive PII and had a resulting duty to securely maintain that information in confidence. Plaintiffs and Class Members would not have provided their PII to Carnival if they had known that Carnival would not ensure that it used adequate security measures.

6. Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was exposed in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to Carnival's data security policies and practices.

**PARTIES**

7. Plaintiff Nyna Collins is a resident of Antioch, California, who has booked 10-12 cruises directly with Carnival dating back to 2010.

8. Plaintiff Teresa Beavers is a resident of Inglewood, California, who has taken two Carnival cruises, and provided Carnival with personally identifiable information.

9. Defendant Carnival Corporation is a Panama-registered corporation, with its principal place of business in Miami, Florida.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Minimal diversity exists because a substantial portion of proposed class members reside outside of Florida. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

11. This Court has general personal jurisdiction over Carnival because it is headquartered in and maintains its principal place of business in this District. *See* 28 U.S.C. 1391(a). Carnival is authorized to and regularly conducts business in Florida.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### The Data Breach

13. Carnival is a cruise line operator that operates more than 90 vessels, and owns multiple private islands and beach ports. Carnival claims that its "purpose" is to "deliver unforgettable happiness to our guests by providing extraordinary cruise vacations."[1]

14. Due to the nature of the services it provides, Carnival acquires and electronically stores PII. Carnival was therefore required to ensure that PII was not disclosed or disseminated to unauthorized third parties without Plaintiffs' and Class Members' express written consent.

---

[1] Carnival Corporation & P.L.C., available at https://Carnival.com/about (last visited on Apr. 22, 2026).

15. On April 18, 2026, the ShinyHunters ransomware group claimed to have accessed over 8.7 million Carnival records containing personally identifiable information and internal corporate data. Carnival confirmed it had detected suspicious activity, but has not disclosed meaningful details.[2]

16. Carnival has not disclosed any further information regarding the Data Breach, which is inimical to its customers' interests. Carnival should be required to disclose why PII was stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Carnival knows about the degree to which the data has been disseminated.

17. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Carnival has taken to secure the PII still in its possession. Plaintiffs seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiffs' and Class Members' interests, and ensure that Carnival has proper measures in place to prevent similar incidents from occurring in the future.

**Carnival's Security Representations**

18. Carnival's website includes a "Privacy Notice" that outlines the information that it maintains and its promises to keep Plaintiffs' and Class Members' data safe.[3]

---

[2] Carnival Corporation Probes Data Breach After Claims of 8.7 Million Records Theft, available at https://securityboulevard.com/2026/04/carnival-corporation-probes-data-breach-after-claims-of-8-7-million-records-theft/ (last visited Apr. 22, 2026).

[3] Privacy Notice, available at https://www.carnivalcorp.com/privacy-notice/ (last visited Apr. 22, 2026).

19. Carnival acknowledges collecting "types of personal information [that] are considered 'sensitive' under certain U.S. state privacy laws. This includes things like [customers'] social security number, driver's license number, passport number, payment card details, financial account information, health information, biometric data used for uniquely identifying someone, username and password, information from children, and precise geolocation data."[4]

20. The Privacy Notice lists a variety of reasons why Carnival might share customers' personal information. None of those reasons encompass the disclosure of such information to cybercriminals.

**Carnival Stores Plaintiffs' and Class Members' PII**

21. Carnival obtained and stored a massive amount of PII. As a condition of purchasing its services, Carnival required that customers entrust it with highly confidential PII.

22. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Carnival assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

23. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII, and relied on Carnival to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII is Valuable and Subject to Unauthorized Disclosure**

24. Carnival was aware that the PII it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

---

[4] *Id*.

25. PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft and financial fraud.[5] Indeed, a robust illegal market exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the "dark web." Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner" in case a scammer's "bona fides" are challenged when they attempt to use the credit card, are also offered on the dark web.[6]

26. The ramifications of Carnival's failure to keep Plaintiffs' and Class Members' PII secure are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

27. Further, criminals often trade stolen PII for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

28. Carnival knew, or should have known, the importance of safeguarding PII entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiffs and Class Members because of a breach. Carnival failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[5] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last visited Apr. 22, 2026).

[6] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last visited Apr. 22, 2026).

**The Data Breach Exposed Plaintiffs and Class Members to Identity Theft and Out-of-Pocket Losses**

29. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

30. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII, Carnival's policies and practices with respect to maintaining the security of Plaintiffs' and Class Members' PII were reckless, or at the very least, negligent.

31. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of Carnival's misfeasance.

32. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[7]

33. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII;

[7] 2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last visited Apr. 22, 2026).

c. lost or diminished value of their PII;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

g. statutory damages;

h. nominal damages; and

i. the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Carnival's possession and is subject to further unauthorized disclosures so long as Carnival fails to undertake appropriate and adequate measures to protect the PII.

**Carnival Violated FTC Guidelines**

34. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Carnival from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

35. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[8]

36. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[9] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

37. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[10]

38. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting

---

[8] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last visited Apr. 22, 2026).

[9] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last visited Apr. 22, 2026).

[10] FTC, Start With Security, *supra*.

from these actions further clarify the measures businesses must take to meet their data security obligations.

39. Carnival failed to properly implement basic data security practices. Carnival's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**Plaintiff Collins' Experience**

40. Plaintiff Nyna Collins has booked 10-12 cruises directly with Carnival dating back to 2010.

41. Carnival obtained Ms. Collins' PII in the course of conducting its regular business operations. At the time of the Data Breach, Carnival retained Ms. Collins' PII.

42. Ms. Collins greatly values her privacy and is very careful about sharing her sensitive PII. Ms. Collins diligently protects her PII, takes proactive steps to ensure that her PII is kept safe and secure, and stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

43. Carnival obtained and continues to maintain Ms. Collins's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

44. The Data Breach has caused Ms. Collins to suffer substantial injury, as well as imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

45. As a result of the Data Breach, Ms. Collins is at present risk and will continue to be at increased risk of additional identity theft and fraud for years to come.

46. Ms. Collins has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Carnival's possession, is protected and safeguarded from future breaches.

**Plaintiff Beavers' Experience**

47. Plaintiff Teresa Beavers has taken two Carnival cruises, and provided Carnival with personally identifiable information.

48. Carnival obtained Ms. Beavers' PII in the course of conducting its regular business operations. At the time of the Data Breach, Carnival retained Ms. Beavers' PII.

49. Ms. Beavers greatly values her privacy and is very careful about sharing her sensitive PII. Ms. Beavers diligently protects her PII, takes proactive steps to ensure that her PII is kept safe and secure, and stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

50. Carnival obtained and continues to maintain Ms. Beavers's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

51. The Data Breach has caused Ms. Beavers to suffer substantial injury, as well as imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

52. As a result of the Data Breach, Ms. Beavers is at present risk and will continue to be at increased risk of additional identity theft and fraud for years to come.

53. Ms. Beavers has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Carnival's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

54. This civil action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4). Plaintiffs seek certification of the following class:

> All persons in the United States and its territories whose PII was compromised in the Data Breach.

55. Excluded from the Class are Carnival, any entity in which Carnival has a controlling interest, and Carnival's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

56. Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

57. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose PII was exposed by Carnival is approximately 1.4 million. All Class Members' names and addresses are available from Carnival's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

58. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent Carnival had a duty to protect Plaintiffs' and Class Members' PII;

b. Whether Carnival was negligent in collecting and storing Plaintiffs' and Class Members' PII;

c. Whether Carnival had duties not to disclose Plaintiffs' and Class Members' PII to unauthorized third parties;

d. Whether Carnival took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII;

e. Whether Carnival failed to adequately safeguard Plaintiffs' and Class Members' PII;

f. Whether Carnival failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

g. Whether Carnival adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

h. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Carnival's wrongful conduct;

i. Whether Plaintiffs and Class Members are entitled to restitution because of Carnival's wrongful conduct;

j. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

59. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was disclosed by Carnival. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Carnival's common misconduct. Plaintiffs are advancing the same claims

and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiffs. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

60. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Carnival to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

61. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Carnival has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Carnival's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Carnival's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

62. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually

afford to litigate a complex claim against large corporations, like Carnival. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

63. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Carnival would necessarily gain an unconscionable advantage in non-class litigation, since Carnival would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

64. The litigation of Plaintiffs' claims is manageable. Carnival's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

65. Adequate notice can be given to Class Members directly using information maintained in Carnival's records.

66. Unless a class-wide injunction is issued, Carnival may continue to maintain inadequate security with respect to Plaintiffs' and Class Members' PII, Carnival may continue to

refuse to provide proper notification to Class Members regarding the Data Breach, and Carnival may continue to act unlawfully as set forth in this Complaint.

67. Carnival has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**COUNT I**
**NEGLIGENCE AND NEGLIGENCE *PER SE***
**(on behalf of Plaintiffs and the Class)**

68. Plaintiffs hereby repeat and reallege paragraphs 1 through 67 of this Complaint and incorporate them by reference herein.

69. Carnival knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Carnival's security protocols to ensure that Plaintiffs' and Class Members' PII in Carnival's possession was adequately secured and protected, that Plaintiffs' and Class Members' PII on Carnival's networks was not accessible to criminals without authorization, and that Carnival's employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiffs' and Class Members' PII.

70. Plaintiffs and Class Members entrusted their PII to Carnival with the understanding that Carnival would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

71. Carnival knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiffs' and Class Members' PII involved an unreasonable risk of harm to Plaintiffs and Class Members.

72. Carnival also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII.

73. A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape.

74. Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Carnival knew or should have known of the inherent risks in collecting and storing Plaintiffs' and Class Members' PII, the critical importance of providing adequate security of that information, the necessity for encrypting PII stored on Carnival's systems, and that it had inadequate IT security protocols in place to secure Plaintiffs' and Class Members' PII.

75. Carnival's misconduct created a foreseeable risk of harm to Plaintiffs and Class Members. Carnival's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

76. Plaintiffs and Class Members had no ability to protect their PII that was in Carnival's possession.

77. Carnival was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

78. Carnival had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

79. Carnival had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

80. Carnival systematically failed to provide adequate security for data in its possession.

81. Carnival, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within its possession.

82. Carnival, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

83. Carnival, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII within its possession might have been compromised and precisely the type of information compromised.

84. Carnival's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

85. But for all of Carnival's acts of negligence detailed above, including allowing cyber criminals to access its systems, Plaintiffs' and Class Members' PII would not have been compromised.

86. Plaintiffs never transmitted their unencrypted PII over the internet or any other unsecured source.

87. Following the Data Breach, Plaintiffs' PII has been seized by unauthorized third parties who are now free to exploit and misuse that PII, and Plaintiffs are unable to prevent its further dissemination. Plaintiffs' PII is forever compromised.

88. But for the Data Breach, Plaintiffs would not have incurred the loss and publication of their PII and other injuries.

89. There is a close causal connection between Carnival's failure to implement security measures to protect Plaintiffs' and Class Members' PII and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PII were accessed and compromised as the proximate result of Carnival's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures and encryption.

90. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring their accounts, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

91. As a result of Carnival's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which are still in the possession of third parties, will be used for fraudulent purposes.

92. In addition, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Carnival for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Carnival's duty.

93. Carnival violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Carnival's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving that PII.

94. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

95. Carnival's violation of Section 5 of the FTC Act constitutes negligence *per se*.

96. Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

97. Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling Carnival to institute appropriate data collection and safeguarding methods and policies with regard to PII; and (2) compelling Carnival to provide detailed and specific disclosure of what types of PII have been compromised as a result of the data breach.

**COUNT II**
**BREACH OF EXPRESS CONTRACT**
**(on behalf of Plaintiffs and the Class)**

98. Plaintiffs hereby repeat and reallege paragraphs 1 through 67 of this Complaint and incorporate them by reference herein.

99. Plaintiffs and Class Members entered into valid and enforceable contracts through which they paid money to Carnival in exchange for services. Those contracts included promises by Carnival to secure, safeguard, and not disclose Plaintiffs' and Class Members' PII.

100. Carnival's Notice of Privacy Practices memorialized the rights and obligations of Carnival's students and customers. This document was, upon information and belief, provided to Plaintiffs and Class Members in a manner in which it became part of the agreement for services..

101. In the Notice of Privacy Practices, Carnival commits to protecting the privacy and security of PII and promises to never share Plaintiffs' and Class Members' PII except under certain limited circumstances.

102. Plaintiffs and Class Members fully performed their obligations under their contracts with Carnival.

103. However, Carnival did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' PII. Carnival therefore breached its contracts with Plaintiffs and Class Members.

104. Carnival allowed third parties to access, copy, and/or exfiltrate Plaintiffs' and Class Members' PII without permission. Carnival therefore breached its Privacy Policy as it pertained to Plaintiffs and Class Members.

105. Carnival's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA and applicable industry standards, diminished the value of the services Carnival provided to Plaintiffs and Class Members.

106. As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein, including by Carnival's failure to fully perform its part of its bargain with Plaintiffs and Class Members.

107. As a direct and proximate result of Carnival's conduct, Plaintiffs and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiffs and the Class)**

108. Plaintiffs hereby repeat and reallege paragraphs 1 through 67 of this Complaint and incorporate them by reference herein.

109. Plaintiffs and Class Members have an interest, both equitable and legal, in their PII that was conferred upon, collected by, and maintained by Carnival and that was stolen in the Data Breach.

110. Carnival benefitted from the conferral upon it of Plaintiffs' and Class Members' PII, and by its ability to retain and use that information. Carnival understood that it so benefited.

111. Carnival also understood and appreciated that Plaintiffs' and Class Members' PII was private and confidential and that its value depended upon Carnival maintaining its privacy and confidentiality.

112. But for Carnival's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted with Carnival. Further, if Carnival had disclosed that its data security measures were inadequate, Carnival would not have been permitted to continue in operation by regulators and the financial marketplace.

113. As a result of Carnival's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiffs' and Class Members' PII without having adequate data security measures, and its other conduct facilitating the theft of that PII), Carnival has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

114. Carnival's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiffs' and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

115. Under the common law doctrine of unjust enrichment, it is inequitable for Carnival to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiffs' and Class Members' PII in an unfair and unconscionable manner. Carnival's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

116. The benefit conferred upon, received, and enjoyed by Carnival was not conferred officiously or gratuitously, and it would be inequitable and unjust for Carnival to retain the benefit.

**COUNT IV**
**INJUNCTIVE/DECLARATORY RELIEF**
**(on behalf of Plaintiffs and the Class)**

117. Plaintiffs hereby repeat and reallege paragraphs 1 through 67 of this Complaint and incorporate them by reference herein.

118. Carnival owes a duty of care to Plaintiffs and Class Members requiring it to adequately secure PII.

119. Carnival still stores Plaintiffs' and Class Members' PII.

120. Since the Data Breach, Carnival has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

121. Carnival has not satisfied its legal duties to Plaintiffs and Class Members.

122. Actual harm has arisen in the wake of the Data Breach regarding Carnival's duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their PII, and Carnival's failure to address the security failings that led to that exposure.

123. Plaintiffs, therefore, seeks a declaration: (a) that Carnival's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Carnival must implement and maintain reasonable security measures, including, but not limited to, the following:

a. ordering that Carnival engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Carnival's systems on a periodic basis, and ordering Carnival to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that Carnival engage third-party security auditors and internal personnel to run automated security monitoring;

c. ordering that Carnival audit, test, and train its security personnel regarding any new or modified procedures;

d. ordering that Carnival segment PII by, among other things, creating firewalls and access controls so that if one area of Carnival's system is compromised, hackers cannot gain access to other portions of Carnival's system;

e. ordering that Carnival purge, delete, and destroy in a reasonably secure manner PII that are not necessary for its provision of services;

f. ordering that Carnival conduct regular computer system scanning and security checks; and

g. ordering that Carnival routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b. for equitable relief enjoining Carnival from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c. for equitable relief compelling Carnival to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: April 23, 2026

Respectfully submitted,

*/s/ D. Todd Mathews*

**BAILEY & GLASSER, LLP**
D. Todd Mathews, FL Bar Number 163104

Bart D. Cohen (*pro hac vice* forthcoming)
Panida A. Anderson (*pro hac vice* forthcoming)
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
tmathews@baileyglasser.com
bcohen@baileyglasser.com
panderson@baileyglasser.com

*Attorneys for Plaintiffs and the Proposed Class*